**IN THE COURT OF APPEALS OF IOWA**

No. 17-0409
Filed July 6, 2017

**IN THE INTEREST OF K.F., K.F., AND J.F.,**
**Minor Children,**

**K.F., Father,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.


　　　A father appeals from the juvenile court's order terminating his parental rights to his three children. **AFFIRMED.**



　　　Charles E. Isaacson of Charles Isaacson Law P.C., Des Moines, for appellant.

　　　Thomas J. Miller, Attorney General, and Mary K. Wickman, Assistant Attorney General, for appellee.

　　　ConGarry D. Williams of State Public Defender's Office, Des Moines, attorney and guardian ad litem for minor children.


　　　Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

A father appeals from the juvenile court's order terminating his parental rights to his three children: Ky.F., born in 2015; Kn.F., born in 2014; and J.F., born in 2012. He argues the court erred in terminating his parental rights because there was insufficient proof termination was in the children's best interests. Upon our de novo review, we affirm.

## I.      Background Facts and Proceedings

This family first came to the attention of the Iowa Department of Human Services (DHS) in 2014, after Kn.F. was born with THC, methadone, and opiates in his cord blood, resulting in a founded child abuse assessment. In February 2015, the mother consented to the removal of J.F. and Kn.F. from her custody due to her ongoing drug abuse. The court placed the children with their father. The juvenile court adjudicated J.F. and Kn.F. children in need of assistance (CINA) and continued their removal from their mother's custody and their placement with their father. The court ordered the father not to allow contact between the children and their mother, who was a risk to the children's safety due to her continued use of various drugs.

In May, the mother and father had another baby, who was also born with opiates and THC in his cord blood. The court entered a temporary removal order removing Ky.F. from the mother's custody and placing the child with the father. Later that month, the State filed a CINA petition on behalf of Ky.F. Ky.F. was adjudicated CINA, and placement with the father and Ky.F.'s two siblings was continued. Per DHS recommendation, the mother was only allowed to have supervised visits with her children due to her continued substance abuse.

In August 2015, concerns arose that the father was allowing the mother to have unsupervised visits with the children. A safety plan was created to allow the children to remain in the father's care and ensure there would be no unsupervised contact between the children and their mother. Almost immediately the father violated the safety plan, and the children were removed from his custody. The court placed the children with relatives of the father, and they have remained in this placement.

In February 2016, the State filed a petition to terminate both parents' parental rights. The court held a hearing on the petition in April. Thereafter, the court ordered termination of the mother's parental rights but dismissed the termination petition with regard to the father. Although the court found the State had proved a ground for termination under Iowa Code section 232.116(1)(h) (2016) by clear and convincing evidence with regard to all three children, the court determined termination was not in the children's best interests because there was not clear and convincing evidence the father and mother had continued their "toxic and manipulative" relationship. The court noted the father was "participating in substance-abuse treatment and therapy," "taking his prescribed medication," and "exercising his visitation on a more consistent basis." Based on these facts, the court gave the father an additional six months for continued reunification efforts with his children. The court set the following goals for the father: complete substance-abuse treatment and refrain from using drugs or alcohol; actively participate in individual therapy; manage his medications; have no intentional contact with the mother or allow the children to have contact with their mother; and exercise visitation with the children as per DHS and Family

Safety, Risk, and Permanency (FSRP) recommendations. In the following months, the father denied any contact with the mother; however, they conceived another child together.[1]

In February 2017, the court held a combined permanency review and termination hearing regarding the father's parental rights. Following the hearing, the court terminated the father's parental rights due to him not meeting the goals set out for him in the court's prior order.

## II.  Scope and Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the children. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III.  Analysis

"Our review of termination of parental rights under Iowa Code chapter 232 is a three-step analysis." *In re M.W.*, 876 N.W.2d at 219. First, we must determine whether the State established the statutory grounds for termination by clear and convincing evidence. *See* Iowa Code § 232.116(1); *In re M.W.*, 876 N.W.2d at 219. Second, if the State established the statutory grounds for termination, we consider whether termination is in the children's best interests under section 232.116(2). *See In re M.W.*, 876 N.W.2d at 219–20. Finally, we

---

[1] The child was born in August 2016 and tested positive for marijuana, hydromorphone, and methadone. This child was removed from the parents' custody while still in the hospital and is the subject of a separate CINA action.

consider whether any exceptions under section 232.116(3) weigh against termination. *See id.* at 220.

The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e) as to all three children, paragraph (f) as to J.F., and paragraph (h) as to Kn.F. and Ky.F. The father does not challenge the statutory grounds for termination on appeal; thus, we do not address this issue and affirm the statutory grounds for termination. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (stating that, when a parent does not challenge the existence of statutory grounds, we need not address the issue). Instead, the father contends termination is not in the children's best interests because he believes that a guardianship with his relatives would be the appropriate solution.

In determining whether termination of a parent's parental rights is in children's best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). "Insight for the determination of [the children's] long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (quoting *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000)).

Because there has already been a six-month extension, we must view this case with a sense of urgency. *See In re C.B.*, 611 N.W.2d at 495; *see also In re A.B.*, 815 N.W.2d at 777 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section

232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (quoting *In re P.L.*, 778 N.W.2d at 41)). The juvenile court gave the father an additional six months after the first permanency and termination hearing to become a parent able to regain custody of his children.

The father has successfully maintained stable employment, only losing it shortly before the second termination hearing, and has also maintained stable and appropriate living conditions. However, the father has not made satisfactory progress toward reunification through the goals set out at the first termination hearing. Since October 2016, he has taken part in a total of six visits out of a possible thirty-three. While the father did get into a work accident during this time, which he claims affected his engagement in visitation with his children, he never reached out to DHS or his FSRP workers to ask for an accommodation with regard to his injuries. These children need and deserve permanency and stability. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). The children have been living in the home of their paternal relatives for over a year and a half. During this time, their hygiene, their growth and development, and their happiness have greatly improved. Due to the sporadic nature of their father's visits, they have not held a deep bond with him since they moved in with their relatives. Ky.F. has basically no bond whatsoever with his father.

The father had previously attended mental-health therapy with both a therapist and a psychiatrist. He was prescribed medicine to deal with his inability to regulate his emotions, which the therapist reported had been effective in

managing his conditions. However, he has since stopped attending therapy and taking any mental-health medications.

Even more troubling is his continued relationship with the mother. He previously informed the court he had no contact with the mother, and yet, they conceived a child together during that time. He has since conceded they did see each other the one time but claims there was no other contact between them. The juvenile court made specific factual findings to show the father was not credible on those claims. This is especially troubling because the mother has been adjudicated a risk to the children's health and safety and the father has shown an inability to protect the children from her. All three of the children are thriving in their current placements, and all of their personal and medical needs are being met. Termination is in the children's best interests.

The father argues that, because the children are living with a family member, his rights should not have been terminated and the court instead should have established a guardianship for the children with their relatives. Placement with a relative is an exception to termination under section 232.116(3)(a). However, these exceptions are only permissive, and the court has "discretion, 'based on the unique circumstances of each case and the best interests of the child[ren], whether to apply the factors in [section 232.116(3)] to save the parent-child relationship.'" *In re M.W.*, 876 N.W.2d at 225 (quoting *In re A.M.*, 843 N.W.2d at 113).

Again, we must address the best interests of the children in this scenario. The children are in a home that is ready and willing to adopt them. In the case of a guardianship, the children remain in a state of limbo, whereas termination

allows permanency and stability. *See In re C.M.*, No. 14-2174, 2015 WL 1332008, at *3 (Iowa Ct. App. Mar. 25, 2015). Once the grounds for termination have been met, termination may be in the best interests of the children even if they are in relative placement. *See In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa Ct. App. 1992); *see also In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017) (noting "a guardianship is not a legally preferable alternative to termination," but nevertheless reversing the district court's decision to terminate the mother's parental rights and directing the juvenile court to establish a guardianship with the child's grandmother under the unique facts and circumstances of the case, including that the child was ten years old and shared a strong bond with the mother, the mother had had stretches of sobriety and was in a treatment program that appeared to be working, and the grandmother and the mother had a healthy and respectful relationship and were able to work together in the best interests of the child). Our supreme court has been clear that termination of a parent's rights "is not to be countermanded by the ability and willingness of a family relative to take the child. The child's best interests always remain the first consideration." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). These children are in a loving home where they are able to thrive and grow. Given their young ages, it is important that they are in a supportive and safe environment. We must determine their best interests looking at both long-range and immediate interests. *In re J.E.*, 723 N.W.2d at 798; *In re C.K.*, 558 N.W.2d at 172. In the current placement, the children are safe and have shown great progress in their development. In the long term, their current home will allow them to continue to thrive.

The father has not shown he is committed to terminating contact with the mother or seeing the children. He was already given six months to solve some of the past issues and was unable to do so. These children need stability and permanency, and termination is the best way to accomplish that.

## IV.    Conclusion

We have carefully reviewed the record, the parties' arguments, and the juvenile court's ruling. Upon our de novo review, we conclude the State proved by clear and convincing evidence that termination is in the children's best interests. Accordingly, we affirm.

**AFFIRMED.**